**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ONE SD HOBOKEN LLC; ONE SD INVESTOR HOLDING LLC; KMS DEVELOPMENT PARTNERS GP, LLC, individually and as General Partner on behalf of KMS DEVELOPMENT PARTNERS, LP,<br><br>Plaintiffs,<br><br>v.<br><br>MARK JOHN CHANDLER d/b/a MARCUS HAMILTON CHANDLER; CFT-US35 LLC; CFT-US36, *et al.*,<br><br>Defendants. | No. 23cv13043 (EP) (ADS)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

Plaintiffs One SD Hoboken LLC, One SD Investor Holding LLC, KMS Development Partners, L.P., and KMS Development Partners GP, LLC (collectively, "Plaintiffs") bring this action against Defendant Mark John Chandler a/k/a Marcus Hamilton Chandler ("Chandler") arising from proposed financing for the redevelopment of the Frank Sinatra Post Office site in Hoboken, New Jersey into a hotel (the "Project"). D.E. 1 ("Complaint" or "Compl.").

Plaintiffs allege that Chandler—while using the name Marcus Hamilton Chandler and presenting himself as the chairman of the Chandler Family Trust of London, England—falsely represented that he could provide a $157 million construction loan and approximately $50 million in mezzanine financing or equity for the Project. *Id.* ¶¶ 1–3, 14–22. Plaintiffs further allege that Chandler used a false identity, fabricated financing materials, caused communications to appear to originate from persons associated with the purported Trust, and used related entities to induce

two transfers from Plaintiffs totaling $800,000 before they learned his true identity and alleged lack of financing capacity. *Id.* ¶¶ 17–28.[1]

Based on that alleged scheme, Plaintiffs bring three claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68: conducting an enterprise through a pattern of racketeering activity under § 1962(c) (Count I), using or investing racketeering income under § 1962(a) (Count II), and conspiracy under § 1962(d) (Count III). Plaintiffs also assert claims for common law fraud (Count IV) and civil conspiracy (Count V). *Id.* ¶¶ 32–75.

Chandler was served, appeared *pro se*, and answered. D.E. 22 ("Answer"). Beginning in January 2025, however, his participation in the case ceased. After Chandler failed to appear for multiple conferences, provide his Rule 26 disclosures, appear for his deposition, and comply with Court orders, the Honorable Michael A. Hammer, U.S.M.J., recommended that the Answer be stricken and default entered. D.E. 49 ("R&R") at 3–9. On September 2, 2025, the Court adopted the R&R, struck the Answer with prejudice, and directed the Clerk to enter default. D.E. 51 ("Default Order") at 5–6.

Plaintiffs later moved for default judgment, but the Court denied that motion without prejudice because Plaintiffs had not adequately addressed the governing factors, the elements of their five claims, or the relief requested. D.E. 55 ("Prior Order") at 3–5. Plaintiffs then filed the Renewed Motion for Default Judgment now before the Court. D.E. 56 ("Renewed Motion" or "Renewed Mot."); D.E. 56-1 ("Renewed Brief" or "Renewed Br.").

[1] Plaintiffs also name John Does 1 through 5, whom they describe as Chandler's "unknown coconspirators." Compl. ¶¶ 8–9. Plaintiffs allege that the Does assisted Chandler by establishing or affiliating themselves with LLCs, creating domain names and email addresses, opening bank accounts, and communicating with attorneys, business agents, and Plaintiffs on his behalf. *Id.* ¶ 9.

The Court decides the Renewed Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons below, the Court will **GRANT** the Renewed Motion only as to Chandler's liability on Count IV, **DENY** it as to Counts I through III and V, and **RESERVE** plaintiff-specific compensatory damages pending a limited supplemental submission.

# I. BACKGROUND

## A. Factual Background[2]

One SD Hoboken LLC ("One SD Hoboken") owns the property in Hoboken at issue in this action and is wholly owned by One SD Investor Holding LLC ("One SD Investor"). Compl. ¶ 5. KMS Development Partners, L.P. ("KMS LP") is the managing member of One SD Investor, and KMS Development Partners GP, LLC ("KMS GP") is KMS LP's general partner. *Id.* ¶ 6. Plaintiffs and their affiliated and predecessor entities have worked in real estate development and construction for more than fifty years, and since approximately 2010, have pursued the redevelopment of the Hoboken site into the Project. *Id.* ¶¶ 13–14. In August 2022, KMS LP, through One SD Hoboken, purchased the Project site from the United States Postal Service. *Id.* ¶ 15.

By the fall of 2022, KMS LP was seeking equity and construction financing for the Project. *Id.* ¶ 16. In January 2023, attorney Guy Maisnik introduced KMS LP to Chandler. Chandler represented that his name was Marcus Hamilton Chandler and that he was the chairman of the Chandler Family Trust of London, England. *Id.* Chandler also represented that he was extremely wealthy and a descendant of the Chandler family of London. *Id.* ¶ 17. Plaintiffs allege that Chandler knew those representations were false when he made them. *Id.*

[2] The Court summarizes principally the facts alleged in the Complaint and separately identifies the payment records and Chandler's prior criminal case where relevant to deciding the Renewed Motion.

On January 16, 2023, after discussions and exchanges of draft terms, Chandler emailed Plaintiffs what he described as a "fully executed Term Sheet" for a $157 million construction loan. *Id.* ¶ 18. Plaintiffs allege that the financing representations in that document were false and that Chandler knew they were false. *Id.*

In connection with the proposed construction financing, KMS LP caused a $300,000 due diligence deposit to be placed in Maisnik's trust account, which was later released to Chandler. *Id.* ¶ 19. In support of the Renewed Motion, Plaintiffs submitted a payment record identifying One SD Hoboken as the originating company and the Jeffer Mangels Butler & Mitchell LLP retainer account as the recipient, with the payment described as debt placement costs associated with the proposed Hoboken construction loan. D.E. 56-5 ("$300,000 Payment Record") at 3.

On January 20, 2023, Chandler sent or caused to be sent an email to Plaintiffs attaching materials that purported to describe his family's prior projects. Compl. ¶ 17. While the email appeared to come from an individual named Raymond Lu using a Chandler Family Trust domain, Plaintiffs allege that Lu later denied sending the email or having any relationship with Chandler or the purported Trust. *Id.* The apparent financing activity continued over the ensuing months. Chandler thereafter engaged several professional consultants, including construction consultant Tom Moore, who visited the Project site on April 9, 2023. *Id.* ¶ 20.

KMS LP also sought approximately $50 million in additional capital for the Project. *Id.* ¶ 21. In February 2023, KMS LP and Chandler negotiated a second proposed transaction under which Chandler's entity would provide a $50 million mezzanine loan or equity investment. *Id.* The Original Mezzanine Capital Term Sheet identified One SD Hoboken as the "Developer" and One SD Investor as the "Developer Member." D.E. 56-6 ("Mezzanine Term Sheet") at 2–6. The Mezzanine Term Sheet required the Developer Member to pay a $1 million commitment fee, including an initial $500,000 payment within five business days after receipt of the executed term

sheet. *Id.* at 3. Plaintiffs allege that Chandler represented that the initial $500,000 would be refunded if he did not proceed with the mezzanine financing. Compl. ¶ 22. The corresponding payment record identifies One SD Hoboken as the originating company and "CFI-US35 LLC"[3] as the recipient. D.E. 56-7 ("$500,000 Payment Record") at 2–3.

For the next several months, KMS LP, Chandler, and their representatives participated in weekly Project calls and exchanged frequent emails and telephone calls. Compl. ¶ 23. In May 2023, KMS LP and Chandler executed updated construction and mezzanine term sheets that moved the anticipated closing dates to January 2024. *Id.* ¶ 24. Plaintiffs were then told that Chandler had retained a different law firm to represent him in connection with the Project. *Id.* ¶ 25. On June 29, 2023, KMS LP received a draft commitment letter from a person identified as Peter Harper, purportedly Chandler's "Head of Capital Markets," and KMS LP returned comments on July 11, 2023. *Id.* ¶ 26.

On July 19, 2023, Moore told KMS LP representative Rob Reed that Chandler's associate Michael Mirando had advised him that "Marcus Hamilton Chandler" was in fact Mark John Chandler and that Chandler was serving a federal prison sentence for defrauding real estate investors. *Id.* ¶ 27. Plaintiffs then investigated further. They allege that Chandler's stated office address referred to a twentieth floor in a twelve-story building; that the background materials concerning the Chandler Family Trust had been fabricated; and that an accountant identified as the Trust's compliance officer denied any association with Chandler or the Trust. *Id.* ¶ 28(c)–(d). Plaintiffs further allege that Chandler had neither the ability nor the intention to provide the promised financing and had engineered the transactions to obtain their money. *Id.* ¶ 28(e). Plaintiffs allege that they demanded repayment and that no money was returned. *Id.* ¶ 29.

[3] The payment record identifies the recipient as "CFI-US35 LLC," whereas Plaintiffs name CFT-US35 LLC as a Defendant. The Court reproduces the designation appearing in the payment record.

Plaintiffs also rely on Chandler's prior federal fraud conviction as part of their RICO theory. *Id.* ¶ 31; Renewed Mot. ¶ 15. The public record submitted by Plaintiffs includes Chandler's plea agreement in *United States v. Chandler*, where he agreed to plead guilty to one count of wire fraud in the Central District of California. Crim. No. 14-173 (C.D. Cal.), D.E. 90, Plea Agreement for Defendant Mark John Chandler ("Plea Agreement") ¶ 2(a). In the stipulated factual basis of the Plea Agreement, Chandler admitted that, from approximately December 2009 through October 2011, he engaged in a scheme involving a proposed development at 850 South Hill Street in Los Angeles and used materially false representations to obtain money and property from numerous victims. *Id.* ¶ 11. The Plea Agreement attributes approximately $1.57 million in losses to victims of that scheme. *Id.*

**B. Procedural Background**

Plaintiffs filed the Complaint on August 30, 2023. *See* Dkt. Chandler was served and initially participated in the action *pro se*, including by seeking extensions, appearing for conferences, and filing the Answer. D.E. 6; R&R at 3; Answer. Beginning in January 2025, however, Chandler ceased complying with his litigation obligations. He failed to appear for the January 8, June 10, and July 10, 2025 conferences; failed to serve the initial disclosures required by the Court's April 7, 2025 Amended Scheduling Order; and failed to appear for his April 30, 2025 deposition after the deposition had been adjourned at his request. *See* D.E. 48 ("Order to Show Cause" or "OSC") at 1–2.

On July 14, 2025, Judge Hammer ordered Chandler to show cause why his Answer and affirmative defenses should not be stricken based on his noncompliance with discovery obligations and Court orders, including his failure to appear at conferences. *Id.* at 2. Chandler did not respond. Default Order at 2. Judge Hammer thereafter issued the R&R recommending that the Answer be stricken and default entered. R&R at 1, 9. Applying the *Poulis* factors, Judge Hammer found

Chandler personally responsible for his noncompliance, found that his conduct prejudiced Plaintiffs and reflected a history of dilatoriness and willfulness, and concluded that lesser sanctions were unlikely to prompt his renewed participation. *Id.* at 6–9. Judge Hammer treated the merits factor as neutral because Chandler's abandonment made a meaningful assessment of the parties' claims and defenses impossible. *Id.* at 9.

No objections were filed to the R&R. Default Order at 5. On September 2, 2025, the Court adopted the R&R, struck the Answer *with prejudice*, and directed the Clerk to enter default under Rule 55(a). *Id.* at 5–6.

Plaintiffs then filed their first motion for default judgment on October 9, 2025. D.E. 54. The Court denied that motion without prejudice on March 16, 2026. Prior Order at 3–5. The Court explained that Plaintiffs had not filed a supporting brief, addressed the *Chamberlain* factors, *see Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000), stated and applied the elements of their five causes of action, or adequately supported the requested damages and RICO trebling. *Id.* The Court permitted Plaintiffs to file a renewed motion within thirty days. *Id.* at 5.

Plaintiffs filed the Renewed Motion on March 23, 2026, and clarified that they seek judgment only against Chandler. Renewed Br. at 1. Chandler has not opposed the Renewed Motion. *See* Dkt.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 separates the entry of default from the entry of default judgment. When a party "has failed to plead or otherwise defend," the Clerk enters default under Rule 55(a). Fed. R. Civ. P. 55(a). After default has been entered, the plaintiff may seek judgment under Rule 55(b). Fed. R. Civ. P. 55(b). The Renewed Motion is governed by Rule 55(b)(2), which authorizes the Court to enter judgment against a party in default.

An entry of default does not entitle a plaintiff to judgment as a matter of right; whether to enter default judgment remains within the Court's discretion. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984). Before entering judgment, the Court must determine whether the admitted facts establish a legally sufficient claim. *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005). By default, Chandler admits Plaintiffs' well-pleaded factual allegations in the Complaint, but not those concerning damages or Plaintiffs' legal conclusions. *Id.* Liability therefore must rest on facts Plaintiffs pleaded in the Complaint; Plaintiffs cannot cure a missing allegation through factual assertions appearing only in their default judgment papers. *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Accordingly, the Court must determine whether the admitted facts satisfy the elements of each claim.

If a legally sufficient claim is stated, the Court considers three factors in deciding whether to enter default judgment: (1) prejudice to the plaintiff if judgment is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether the defendant's delay resulted from culpable conduct. *Chamberlain*, 210 F.3d at 164 (herein, the "*Chamberlain* factors"). Those factors guide the Court's discretionary judgment under Rule 55(b).

Damages require a separate inquiry. A default does not admit the amount of damages, and Plaintiffs must establish the monetary relief to which they are entitled. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). If damages are not for a sum certain or otherwise susceptible to computation, Rule 55(b)(2) permits the Court to conduct a hearing or take other steps necessary to determine the appropriate award. Fed. R. Civ. P. 55(b)(2).

## III. DISCUSSION

The Court proceeds in four steps. *First*, it addresses the threshold requirements for default judgment, including subject matter jurisdiction, personal jurisdiction, and service. *Second*, it considers whether Plaintiffs' well-pleaded factual allegations establish each of the five

causes of action asserted against Chandler. *Third*, the Court applies the *Chamberlain* factors to any viable claim. *Fourth*, it considers relief.

As explained below, Plaintiffs do not plead facts establishing the continuity necessary for a pattern of racketeering activity under § 1962(c), an injury caused by the use or investment of racketeering income under § 1962(a), or an agreement to commit a substantive RICO violation under § 1962(d). Because Plaintiffs have not established a RICO violation, treble damages and attorney's fees under § 1964(c) are unavailable. Plaintiffs do, however, adequately plead common law fraud against Chandler. Their civil conspiracy claim fails because they do not allege facts showing that Chandler reached the necessary agreement with another person. The Court will therefore **GRANT** default judgment only on Count IV. Because the present record does not establish which Plaintiff ultimately bore each loss, the Court will **RESERVE** compensatory damages and require a limited supplemental submission.

## A. The Court Has Jurisdiction

### *1. Subject matter jurisdiction*

The Court has subject matter jurisdiction over this action because Counts I through III of the Complaint arise under RICO, a federal statute. 28 U.S.C. § 1331; Compl. ¶ 10; 18 U.S.C. §§ 1962, 1964. The Court also has supplemental jurisdiction over Counts IV and V—Plaintiffs' common law fraud and civil conspiracy claims—as they arise from the same alleged financing scheme as the RICO claims. 28 U.S.C. § 1367(a); Compl. ¶ 11.[4]

---

[4] Although the federal RICO claims do not support default judgment, the Court will nevertheless retain supplemental jurisdiction over Counts IV and V. When all federal claims are dismissed, a district court may decline supplemental jurisdiction, and the usual course is to do so when federal claims disappear before trial unless considerations of judicial economy, convenience, and fairness point the other way. *See Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

*2. Personal jurisdiction*

The admitted allegations also establish specific personal jurisdiction over Chandler. Specific jurisdiction requires purposeful direction of activities at the forum, a claim that arises out of or relates to those activities, and an exercise of jurisdiction consistent with fair play and substantial justice. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). Plaintiffs allege that Chandler solicited financing-related payments for a development based in New Jersey (*i.e.*, the Project), transmitted term sheets directed to the Project, required a due diligence deposit for work concerning the Hoboken property, and engaged a consultant who visited the property site (in New Jersey) on his behalf. Compl. ¶¶ 16–22. Taken as admitted, those forum-directed contacts give rise to Plaintiffs' claims. Therefore, exercise of jurisdiction over Chandler is proper.

**B. Service Was Proper**

Service presents no impediment to judgment here. Chandler was served, appeared, participated in conferences, and filed an Answer before the Answer was later stricken as a sanction. Answer; Default Order at 1. His default resulted from later willful noncompliance, not a lack of notice of the action. R&R at 6–9; Default Order at 5–6.

---

Those considerations favor retention here. This action has been pending since 2023; Chandler answered; the Court supervised discovery, resolved repeated noncompliance, adopted a sanctions recommendation, struck the Answer, and already adjudicated one default judgment motion. Answer; OSC; Default Order; Prior Order. The remaining state law issues are straightforward and have been fully presented in the Renewed Motion. Requiring Plaintiffs to begin anew in state court at this stage would duplicate substantial work already performed by the parties and this Court. The Court therefore exercises supplemental jurisdiction over Counts IV and V.

### C. Plaintiffs Adequately Plead Common Law Fraud, But Not RICO or Civil Conspiracy

By default, Chandler admits Plaintiffs' well-pleaded factual allegations, but not their legal conclusions. *DIRECTV*, 431 F.3d at 165. The Court therefore considers each count separately to evaluate whether those admitted facts establish Chandler's liability.

#### *1. 18 U.S.C. § 1962(c) (Count I)*

Section 1962(c) makes it unlawful for a person employed by or associated with an enterprise affecting interstate or foreign commerce to conduct or participate in the enterprise's affairs "through a pattern of racketeering activity." 18 U.S.C. § 1962(c). A civil § 1962(c) claim requires conduct of an enterprise through a pattern of racketeering activity. *Genty v. Resol. Tr. Corp.*, 937 F.2d 899, 906 (3d Cir. 1991). Although at least two predicate acts are necessary to establish a pattern, they do not alone establish a pattern; the predicates must be related and must amount to or threaten continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239–43 (1989). Continuity may be either closed-ended or open-ended. Closed-ended continuity requires a series of related predicates extending over a substantial period of time, while open-ended continuity exists when past conduct, although not itself prolonged, "projects into the future with a threat of repetition." *Id.* at 241–43. Such a threat may arise, for example, where the predicate acts themselves threaten continued repetition or constitute an ongoing entity's regular way of doing business. *Id.* at 242–43. By contrast, predicate acts extending over only a few weeks or months—without a threat of future criminal conduct—do not satisfy the continuity requirement because RICO addresses long-term criminal conduct. *Id.* at 242.

Applying these principles, the Third Circuit has repeatedly found fraudulent schemes lasting roughly a year or less insufficient to establish closed-ended continuity. And where such a scheme is finite and poses no threat of future racketeering, it does not establish open-ended

continuity either. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1417–19 (3d Cir. 1991) (holding that an eight-month fraud directed at a single entity did not establish continuity absent a threat of future criminal activity); *Hindes v. Castle*, 937 F.2d 868, 875 (3d Cir. 1991) (holding that an eight-month mail fraud scheme lacked closed-ended continuity where the scheme ended upon completion of its electoral objective and posed no threat of continued racketeering); *Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 610–11 (3d Cir. 1991) (holding that a property acquisition scheme lasting approximately ten to twelve months did not establish closed-ended continuity and finding no open-ended continuity because the finite scheme posed no future threat). Nor does the use of multiple mailings or wire communications to execute a single finite fraud, without more, transform that fraud into long-term racketeering. *See Kehr Packages*, 926 F.2d at 1418–19 (explaining that continuity turns on the underlying deceptive activity, not the sheer number of mailings, and that numerous otherwise routine mailings cannot by themselves transform a finite fraud into a RICO pattern).

Against this backdrop, the Court concludes that Plaintiffs' Project-related allegations do not satisfy RICO's continuity requirement. The pleaded scheme lasted, at most, seven months. It began in January 2023—when Chandler was introduced to KMS LP and began presenting proposed financing—and was exposed by July 19, 2023, when Michael Mirando's[5] disclosure prompted Plaintiffs' investigation. Compl. ¶¶ 16, 27–28. The alleged emails, term sheets, telephone calls, commitment documents, and two payments all furthered one finite objective: obtaining money from the same group of affiliated Plaintiffs through purported financing for the Project. *Id.* ¶¶ 16–31. The fact that the scheme involved numerous communications does not materially impact the continuity analysis; under *Kehr Packages*, the continuity inquiry looks

[5] The Complaint identifies Mirando as "Chandler's associate" but does not name him as a defendant. Compl. ¶¶ 7–9, 27.

beyond the sheer number of mailings or wires to the underlying fraudulent activity they furthered. *See* 926 F.2d at 1418–19. Those communications may support a fraudulent course of conduct, but the roughly six to seven month long scheme does not amount to closed-ended continuity under the authorities above. In fact, its duration is shorter than the eight-month schemes the Third Circuit found insufficient in *Kehr Packages* and *Hindes*.

Nor do the well-pleaded facts establish open-ended continuity. Plaintiffs do not plead facts that show the 2023 association-in-fact enterprise regularly engaged in similar frauds against other victims, that it continued operating after Plaintiffs exposed Chandler, or that the nature of the Hoboken financing scheme necessarily threatened repetition into the future. Compl. ¶¶ 32–47. Although Plaintiffs characterize Defendants' conduct as "ongoing fraudulent activities" and refer to a continuing "plan to scheme or defraud," they do not identify additional victims, transactions, or intended future frauds by the alleged enterprise. *Id.* ¶¶ 42–43. Instead, the scheme had a natural endpoint: obtaining fees and deposits associated with the proposed Project financing. *Id.* ¶¶ 18–26. Once Plaintiffs discovered Chandler's identity and the alleged falsity of the financing representations, that objective could no longer be pursued against them in the manner alleged. The pleaded scheme therefore resembles the finite, one-time rackets in *Hindes* and *Hughes*, rather than conduct that by its nature threatened repetition into the future. *See Hindes*, 937 F.2d at 874–75; *Hughes*, 945 F.2d at 610–11.

Plaintiffs point to Chandler's prior California conviction in an effort to establish continuity, and characterize those earlier acts as RICO predicates. Compl. ¶ 31. But the admitted factual basis in Chandler's criminal case concerned a different project across the country, different victims, and conduct occurring from 2009 through 2011. Plea Agreement ¶ 11. Specifically, the prior scheme involved Chandler inducing investors to provide money and property for a purported real estate development project in Los Angeles, and the stipulated loss exceeded $1.5 million. *Id.*

That history establishes that Chandler engaged in real estate fraud before, but it does not establish that his earlier conduct was part of the association-in-fact enterprise alleged in this case.

Indeed, Plaintiffs plead no facts connecting those earlier acts to the affairs of the specific association-in-fact enterprise alleged here—Chandler, the CFT entities, and the John Doe participants in the 2023 Hoboken scheme. Compl. ¶¶ 8–9, 37–40. Nor do Plaintiffs allege that the CFT entities or the alleged John Doe participants existed during, participated in, or had any relationship to the 2009–2011 California scheme. Thus, the mere fact that Chandler previously committed fraud in the real estate sector does not extend the life of the pleaded enterprise from 2009 through 2023 or establish that fraud was that enterprise's regular way of doing business. Neither Plaintiffs' conclusory characterization of Chandler's prior frauds as predicate acts nor the fact that both schemes generally involved fraud connected to real estate projects links the California conduct to the affairs of the enterprise alleged here. *See DIRECTV*, 431 F.3d at 165.

Because Plaintiffs do not plead facts establishing continuity, they do not state a § 1962(c) claim. The Court need not decide whether Plaintiffs adequately plead every other RICO element, including the precise structure of the alleged enterprise or Chandler's operation or management of it. The Court will **DENY** the Renewed Motion as to Count I.

*2. 18 U.S.C. § 1962(a) (Count II)*

Section 1962(a) prohibits a person who has received income derived from a pattern of racketeering activity from using or investing that income in the acquisition, establishment, or operation of an enterprise affecting interstate or foreign commerce. 18 U.S.C. § 1962(a). A civil plaintiff must additionally allege an injury caused by the use or investment of the racketeering income, not merely an injury caused by the predicate acts through which the income was obtained. *Brittingham v. Mobil Corp.*, 943 F.2d 297, 303–04 (3d Cir. 1991).

Count II first fails for the same reason as Count I: Plaintiffs do not adequately plead a pattern of racketeering activity. Independently, Count II fails because Plaintiffs do not allege the investment injury that § 1962(a) requires. Their asserted loss is the same $800,000 allegedly obtained through the wire fraud scheme associated with the Project. Compl. ¶¶ 19, 22, 56. That is an injury caused by the predicate acts through which the alleged racketeering proceeds were obtained, and it was complete before any subsequent use or investment of those proceeds. It therefore is not an injury caused by the use or investment of racketeering income.[6]

Plaintiffs allege in Count II that Defendants used racketeering income to establish and operate the enterprise, but they do not identify any injury resulting from that use or investment. *Id.* ¶¶ 52–56. And Plaintiffs assert that Chandler used the funds to make payments to co-conspirators and to continue fraudulent activities, Renewed Br. at 7, but even assuming those assertions describe a use or investment of racketeering income, Plaintiffs do not allege in the Complaint that they suffered any distinct injury as a result of that conduct. Moreover, Plaintiffs cannot cure that pleading deficiency through assertions made for the first time in their default judgment papers. *See Zimmerman*, 836 F.2d at 181. Accordingly, the Court will **DENY** the Renewed Motion as to Count II.

*3. 18 U.S.C. § 1962(d) (Count III)*

Section 1962(d) makes it unlawful to conspire to violate § 1962(a), (b), or (c). A RICO conspirator need not personally commit the predicate acts or personally operate or manage the enterprise. Rather, a defendant may be liable if the defendant knowingly agrees to facilitate a

[6] Plaintiffs' $800,000 loss occurred when the alleged racketeering acts induced the two payments and thus was complete before any later use or investment of those proceeds. Section 1962(a) instead requires an injury caused by that later use or investment—for example, a new loss resulting from additional conduct financed with the racketeering proceeds. *See Brittingham*, 943 F.2d at 303–04.

scheme that includes the operation or management of a RICO enterprise. *See Smith v. Berg*, 247 F.3d 532, 537–38 (3d Cir. 2001). Still, the conspirators must agree to pursue an endeavor that, if completed as contemplated, would satisfy the elements of a substantive RICO offense. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 373 (3d Cir. 2010) (holding that a § 1962(d) claim must be dismissed where the contemplated endeavor, if completed, would not satisfy all elements of a substantive RICO offense).

Count III fails at the threshold for the same reason as Counts I and II: Plaintiffs do not adequately plead a pattern of racketeering activity. Plaintiffs allege that Chandler and the other Defendants agreed to conduct the enterprise through a pattern of racketeering activity and to receive and use income derived from that activity. Compl. ¶¶ 58–67. Because Plaintiffs seek default judgment only against Chandler, however, the Court considers whether those allegations are sufficient to establish Chandler's liability under § 1962(d).

They do not. The alleged agreement concerns the same finite Project-related financing scheme discussed above. Because that contemplated scheme does not establish the continuity necessary for a pattern of racketeering activity, an agreement to carry it out would not, even if completed as contemplated, satisfy the substantive requirements of either § 1962(c) or the § 1962(a) theory asserted by Plaintiffs. *See In re Ins. Brokerage*, 618 F.3d at 373. That several people may have agreed to participate in the alleged fraud does not transform the agreed-upon scheme into a RICO conspiracy.

Nor do Plaintiffs' allegations concerning the five unidentified John Doe Defendants establish the necessary agreement. The Complaint describes those Does as Chandler's alleged coconspirators who assisted him from outside prison by establishing LLCs, domain names, email addresses, and bank accounts and by communicating with attorneys, business agents, and Plaintiffs. Compl. ¶ 9. Those allegations describe assistance, but they do not identify which Doe

performed which act or plead facts showing that any Doe understood and agreed to Chandler's fraudulent objective. Nor do they support an inference that any Doe agreed to conduct or participate in the enterprise through a RICO pattern. *See Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 539 (3d Cir. 2012) (explaining that a RICO conspiracy is not merely a conspiracy to commit predicate acts, but a conspiracy to conduct or participate in an enterprise through a pattern of racketeering activity).

Plaintiffs' contention that Chandler conspired with Mirando[7] fares even worse. Renewed Br. at 8. Plaintiffs allege that Chandler engaged Tom Moore as a construction consultant for the Project, and that Moore later told KMS LP representative Rob Reed that Mirando had advised Moore that Chandler was a fraud, using a false identity, and serving a federal prison sentence for a prior fraud. Compl. ¶¶ 20, 27. However, Plaintiffs do not allege in the Complaint that Mirando agreed to further the financing scheme. Thus, the only specific conduct they attribute to Mirando is the disclosure that exposed Chandler.

In the Renewed Brief, Plaintiffs attempt to establish the missing agreement by asserting that Chandler "conspired with Michael Mirando and others" and that the co-conspirators "agreed to work together to defraud Plaintiffs through fabricated loan documents and wire transfers." Renewed Br. at 8. As noted above, Plaintiffs cannot cure the omission of those factual allegations through their default judgment papers. *See Zimmerman*, 836 F.2d at 181.

But, even if Plaintiffs had pleaded those assertions, they would not be enough. Plaintiffs identify no facts showing when or how Mirando joined the alleged agreement or otherwise supporting an inference that he knowingly agreed to facilitate the alleged RICO endeavor. And even a sufficiently pleaded agreement between Mirando and Chandler to carry out the Project-

[7] The Complaint identifies Mirando as "Chandler's associate" but does not name him as a defendant. Compl. ¶¶ 7–9, 27.

related fraud would encounter the same fundamental problem: an agreement to commit that finite fraud is not an agreement to conduct an enterprise through a RICO pattern. *See Zavala*, 691 F.3d at 539. Thus, Plaintiffs' assertions concerning Mirando neither adequately plead his participation in the alleged agreement nor cure the absence of a contemplated pattern of racketeering activity. The Court will therefore **DENY** the Renewed Motion as to Count III.

*4. Common law fraud (Count IV)*

Under New Jersey law, common law fraud requires "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997). Because Count IV sounds in fraud, it is subject to Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct charged, ordinarily by alleging the date, time, and place of the fraud or otherwise injecting precision or some measure of substantiation into the allegations. *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Knowledge and intent, however, may be alleged generally. *Id.* As detailed below, Plaintiffs plead Chandler's alleged fraud with the particularity Rule 9(b) requires and adequately plead each substantive element.

*First,* Plaintiffs allege that Chandler made material misrepresentations concerning his identity and affiliation with the Chandler Family Trust, his financial capacity to fund the Project, and his intention and ability to provide the proposed construction and mezzanine financing. Compl. ¶¶ 16–18, 21–22, 28(e). Those representations concerned existing facts material to Plaintiffs' decision to proceed with the proposed financing. Plaintiffs also allege that Chandler supplied false background materials and caused Plaintiffs to receive communications that falsely

appeared to originate from persons associated with the purported Trust. *Id.* ¶ 17. To the extent Chandler's financing representations contemplated future performance, Plaintiffs also allege that he had no present ability or intention to provide that financing. *Id.* ¶ 28(e). A false representation of an existing intention may support a fraud claim even though the promised performance was to occur in the future. *See Ocean Cape Hotel Corp. v. Masefield Corp.*, 63 N.J. Super. 369, 380–81 (App. Div. 1960) (distinguishing a nonactionable promise of future performance from a misrepresentation of present intent and explaining that fraudulent intent may be inferred from circumstances showing that the promisor knew, when the promise was made, that he could not or would not perform).

*Second*, Plaintiffs repeatedly allege that Chandler knew the financing and identity representations were false when he made them, *id.* ¶¶ 16–18, 21–22, 24, 26, and that Chandler actually had no ability or intention to provide the promised financing and instead engineered the transactions to obtain Plaintiffs' money, *id.* ¶ 28(e). Those allegations adequately plead knowledge and fraudulent intent.

*Third*, the alleged circumstances support an intent to induce reliance. Chandler's financing representations were tied directly to the $300,000 due diligence deposit and the $500,000 commitment fee payment. *Id.* ¶¶ 18–22. The alleged objective of the misrepresentations was to cause Plaintiffs to proceed with those financing transactions and part with money. *Id.* ¶¶ 28(e), 68–70.

*Fourth*, Plaintiffs adequately plead reasonable reliance. Plaintiffs were introduced to Chandler through counsel; received formal term sheets and purported institutional background materials; observed apparent due diligence activity, including Chandler's retention of professional consultants and Moore's visit to the Hoboken site; and continued participation in Project calls and negotiations for several months. *Id.* ¶¶ 16–24. Taken as admitted, those circumstances plausibly

explain why Plaintiffs proceeded with the payments before learning Chandler's identity and alleged lack of financing capacity. That Plaintiffs might have uncovered the fraud earlier through additional investigation does not, standing alone, make their reliance unreasonable. *See Walid v. Yolanda for Irene Couture, Inc.*, 425 N.J. Super. 171, 181, 40 A.3d 85, 91 (App. Div. 2012) (explaining that a recipient of a fraudulent misrepresentation generally may rely on the representation as true even where an investigation could have revealed that it was false).

*Fifth*, and finally, Plaintiffs plead resulting economic injury. They allege that Chandler's financing scheme induced two transfers totaling $800,000 and that no money was returned after demand. *Id.* ¶¶ 19, 22, 29, 70. Those allegations are sufficient as to injury; the precise amount recoverable by each Plaintiff is a damages question the Court addresses below.

Because Plaintiffs plead Chandler's alleged fraud with the particularity Rule 9(b) requires and adequately plead each substantive element, the Court will **GRANT** the Renewed Motion as to Chandler's liability on Count IV, subject to the Court's reservation of plaintiff-specific damages.

5. *Civil conspiracy (Count V)*

Under New Jersey law, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means," whose principal element is an agreement to inflict a wrong or injury and an overt act resulting in damage. *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (2005). A civil conspiracy claim depends on an underlying tort; the agreement itself is not independently actionable absent a wrong that would otherwise give rise to a cause of action. *See Morgan v. Union Cnty. Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 364 (App. Div. 1993). A conspirator need not know every detail of the plan, but must understand its general objectives, accept them, and agree expressly or implicitly to do a part to further them. *Banco Popular*, 184 N.J. at 177. And although an agreement may be established circumstantially, *see McLaren v. UPS Store, Inc.*, No. 21-14424, 2025 WL 3238934,

at *15–16 (D.N.J. Nov. 20, 2025), a conspiracy to commit fraud must still be pleaded with the specificity required by Rule 9(b), *see John Wiley & Sons, Inc. v. Rivadeneyra*, 179 F. Supp. 3d 407, 411–12 (D.N.J. 2016).

Plaintiffs adequately plead the underlying fraud by Chandler for the reasons discussed above. What they do not adequately plead, however, is an agreement between Chandler and another person to commit that fraud. Plaintiffs identify John Does 1 through 5 as Chandler's "unknown coconspirators" and allege that, while Chandler was incarcerated, they collectively helped him outside prison by setting up LLCs, establishing domain names and email addresses, opening bank accounts, and communicating with attorneys, business agents, and Plaintiffs. Compl. ¶¶ 8–9. That is not enough. Critically, Plaintiffs do not identify any particular John Doe as committing any specific act, communication, account, entity, or email address; allege when any Doe performed any of those acts; or plead facts showing that any Doe knew Chandler was using a false identity, knew the proposed financing was fictitious, or otherwise understood and accepted Chandler's alleged objective of obtaining Plaintiffs' money through fraud. The pleaded activities, without more, show that unidentified persons may have assisted Chandler in conducting business from outside prison. That is not insufficient to establish that any such person *knowingly* agreed to participate in Chandler's fraud.

The allegations in Count V do not fix that deficiency. Again, Plaintiffs allege in general terms that Defendants "agreed to and did conspire" and "knowingly, willfully and intentionally conspired and agreed" to defraud them. *Id.* ¶¶ 73–74. Those assertions largely restate the agreement and intent elements of the claim rather than supply facts from which an agreement may reasonably be inferred. As noted above, default admits well-pleaded facts, not legal conclusions. *See DIRECTV*, 431 F.3d at 165. Plaintiffs' allegations are therefore unlike those in cases where circumstantial facts connect a defendant to conduct supporting a reasonable inference that the

defendant understood and joined the fraudulent scheme. *See, e.g.*, *John Wiley*, 179 F. Supp. 3d at 411–12 (finding a conspiracy to defraud adequately pleaded where the defendant allegedly helped create and operate shell companies and fake freight forwarders while knowing that its coconspirators were using false representations to obtain discounted books).

Nor do the other persons identified in Plaintiffs' factual narrative supply the missing agreement. Plaintiffs allege that Raymond Lu—whom the materials sent by Chandler purported to identify as the Chandler Family Trust's compliance officer—denied sending the email attributed to him or having any relationship with Chandler or the purported Trust. Compl. ¶ 17. Plaintiffs also identify Peter Harper as the person who transmitted a draft commitment letter, but Plaintiffs do not allege facts that establish Harper knew any representation was false or that he agreed with Chandler to defraud Plaintiffs. *Id.* ¶ 26. And, as discussed above, Plaintiffs allege that Mirando disclosed Chandler's true identity and fraud to Moore, thereby prompting Plaintiffs' investigation. *Id.* ¶ 27. Plaintiffs' later assertion in the Renewed Brief that Mirando and others "agreed to work together to defraud Plaintiffs" cannot substitute for the factual allegations missing from the Complaint. Renewed Br. at 8; *see Zimmerman*, 836 F.2d at 181.

The requirement of an agreement between at least two legally distinct persons capable of conspiring with one another is particularly important here because Plaintiffs also name Chandler-related corporate entities as participants in the alleged scheme. Under the intracorporate conspiracy doctrine, courts applying New Jersey law generally do not treat a corporation and its principals or agents acting in their representative capacities as separate conspirators, and similarly do not treat a parent and subsidiary as supplying the necessary plurality. *See Chen v. Wang*, No. 22-4708, 2024 WL 4771305, at *19 n.21 (D.N.J. Nov. 12, 2024). The Court need not determine the doctrine's ultimate reach here because Plaintiffs fail earlier by not pleading facts showing that any Chandler-related entity reached an agreement with Chandler as a legally distinct

actor. The corporate entities therefore do not cure the absence of a sufficiently pleaded second conspirator, and the generalized allegations concerning the unidentified John Does do not supply the missing agreement either.

Accordingly, while Plaintiffs adequately plead that Chandler himself committed common law fraud, they do not adequately plead that another person knowingly agreed with him to commit that fraud. The Court will therefore **DENY** the Renewed Motion as to Count V.

### D. The *Chamberlain* Factors Favor Default Judgment on Count IV

Having concluded that only Count IV states a claim against Chandler, the Court considers the three *Chamberlain* factors as to that Count. Applied here, the Court considers: (1) the prejudice to Plaintiffs if judgment is denied; (2) whether Chandler appears to have a litigable defense; and (3) whether Chandler's delay resulted from culpable conduct. *Chamberlain*, 210 F.3d at 164.

*First*, Plaintiffs will be prejudiced if judgment is withheld indefinitely. As Judge Hammer noted, Chandler's abandonment of this action has deprived Plaintiffs of discovery needed to prosecute their claims and has left them without an avenue to obtain a final resolution in the ordinary adversarial process. R&R at 7. Chandler has not resumed participating in the case. *See* Dkt. The prejudice factor favors default judgment.

*Second*, the litigable defense factor is neutral. Plaintiffs state in the Renewed Brief that Chandler never answered, but the docket shows that he did file an Answer before it was stricken. Answer. More importantly, Judge Hammer concluded that Chandler's abandonment made it "impossible" to assess the merits of the parties' claims and defenses and treated the analogous Poulis factor as neutral. R&R at 9. The Court likewise will not infer from Chandler's silence that no conceivable defense exists. The independent merits review above already accounts for the legal insufficiency of the RICO claims while finding the fraud claim sufficient and the civil conspiracy claim deficient.

*Third*, culpability strongly favors judgment. Chandler failed to attend multiple Court-scheduled conferences, did not provide required disclosures, failed to appear for a deposition that had already been rescheduled at *his* request, did not seek timely relief from those obligations, and ignored an Order to Show Cause. OSC; R&R at 3–8. Judge Hammer already found Chandler's conduct willful and concluded that Chandler had chosen not to defend the matter—and that was before Chandler failed to oppose the Renewed Motion. R&R at 8. This Court adopted those findings when it struck Chandler's Answer. Default Order at 5–6.

On balance, the *Chamberlain* factors support default judgment on Count IV.

**E. Relief**

*1. Compensatory damages*

Plaintiffs seek $800,000 in compensatory damages, representing the $300,000 and $500,000 payments described above. Renewed Br. at 9–10. The amounts of the two transfers are well documented. The $300,000 Payment Record identifies One SD Hoboken as the originating company and the Jeffer Mangels retainer account as the recipient. $300,000 Payment Record at 3. The $500,000 Payment Record likewise identifies One SD Hoboken as the originating company and "CFI-US35 LLC" as the recipient. $500,000 Payment Record at 2–3. Plaintiffs allege that neither payment was returned. Compl. ¶ 29.

The present record does not, however, establish *which* Plaintiff ultimately sustained each unreimbursed loss. Plaintiffs state in both the Complaint and Renewed Motion that KMS LP forwarded a $300,000 deposit to Chandler's counsel's trust account, which was later released to Chandler, and a $500,000 mezzanine loan commitment fee directly to Chandler. Compl. ¶¶ 19, 22; Renewed Mot. ¶¶ 9, 11. But Plaintiffs' own payment records identify One SD Hoboken as the remitter of both. $300,000 Payment Record at 3; $500,000 Payment Record at 3. The Mezzanine Term Sheet adds a further distinction: it identifies One SD Hoboken as the "Developer,"

One SD Investor as the "Developer Member," and states that the Developer Member shall pay the commitment fee. Mezzanine Term Sheet at 2–3, 6. Nothing in the submitted materials establishes whether One SD Hoboken funded those payments from its own capital, was reimbursed by an affiliate, received an intercompany receivable or capital contribution, or otherwise transferred the economic burden to another Plaintiff.

In short, the Court can determine from the documentary record that $800,000 left One SD Hoboken's accounts, but it cannot ascertain which entity or entities presently hold the corresponding unrecovered loss. Because default does not admit damages, Plaintiffs must establish which Plaintiff sustained each loss before the Court can enter a monetary award. *Comdyne I*, 908 F.2d at 1149. While a plenary evidentiary hearing is unnecessary at this point, the Court will direct a narrow supplemental submission to resolve the issue. *See Basara*, 2013 WL 3513873, at *5.

Accordingly, the Court **RESERVES** the compensatory damages award. Within **30 days**, Plaintiffs shall submit a certification from a person with personal knowledge that: (1) identifies the source of the funds used for each transfer; (2) states whether One SD Hoboken was reimbursed, credited, capitalized, or given an intercompany receivable for either payment; (3) identifies the entity that presently carries each unrecovered loss; and (4) attaches the relevant bank, general-ledger, intercompany, or other accounting records supporting those statements. Plaintiffs shall also provide a short legal submission explaining which Plaintiff or Plaintiffs may recover for each loss and shall submit a proposed form of monetary judgment consistent with that showing.

### 2. *Treble damages, attorney's fees, and costs*

Plaintiffs also request treble damages and attorney's fees under 18 U.S.C. § 1964(c). Renewed Mot. at 7. Section 1964(c) authorizes those remedies for a person injured by reason of

a RICO violation. Because Plaintiffs have not established a violation of § 1962(a), (c), or (d), their request for RICO trebling and statutory attorney's fees will be **DENIED**.[8]

Plaintiffs identify no independent basis for shifting attorney's fees on Count IV. New Jersey follows the American Rule, under which each party ordinarily bears its own attorney's fees unless a statute, court rule, contract, or recognized exception provides otherwise. *See Litton Indus., Inc. v. IMO Indus., Inc.*, 200 N.J. 372, 385 (2009). Nothing in the Renewed Motion establishes such a basis for Count IV. Any ordinary taxable costs may be sought, when appropriate, under Federal Rule of Civil Procedure 54(d)(1) rather than § 1964(c).

Plaintiffs request punitive damages in the Complaint's prayer, Compl. ¶ 4, but do not request or develop a basis for a punitive damages award. Renewed Br. at 9–11. The Court therefore does not award punitive damages on the present Renewed Motion. Likewise, because the Court is reserving entry of a monetary judgment, post-judgment interest under 28 U.S.C. § 1961 is premature and will be addressed when a monetary judgment is entered.

---

[8] Although not dispositive, it appears there may be an internal arithmetic error in the requested treble damages. Plaintiffs correctly state in their supporting brief that $800,000 multiplied by three equals $2.4 million. Renewed Br. at 10. But the Renewed Motion's prayer asks for $800,000 in compensatory damages plus "an additional $2,400,000" in treble damages. Renewed Mot. at 7. Had § 1964(c) applied, a threefold recovery on $800,000 would total $2.4 million, not $3.2 million.

## IV. CONCLUSION AND ORDER

For the reasons stated above,

**IT IS** on this **25th** day of September, 2026,

**ORDERED** that Plaintiffs' Renewed Motion, D.E. 56, is **GRANTED in part**, **DENIED in part**, and **RESERVED in part**; and it is further

**ORDERED** that the Renewed Motion is **DENIED** as to Count I, alleging a violation of 18 U.S.C. § 1962(c); and it is further

**ORDERED** that the Renewed Motion is **DENIED** as to Count II, alleging a violation of 18 U.S.C. § 1962(a); and it is further

**ORDERED** that the Renewed Motion is **DENIED** as to Count III, alleging a violation of 18 U.S.C. § 1962(d); and it is further

**ORDERED** that Plaintiffs' requests for treble damages and attorney's fees and costs pursuant to 18 U.S.C. § 1964(c) are **DENIED**; and it is further

**ORDERED** that the Renewed Motion is **GRANTED** as to Chandler's liability on Count IV for common law fraud, subject to the Court's reservation of plaintiff-specific damages; and it is further

**ORDERED** that the Renewed Motion is **DENIED** as to Count V for civil conspiracy; and it is further

**ORDERED** that the Court **RESERVES** the amount and allocation of compensatory damages pending a limited supplemental submission; and it is further

**ORDERED** that, within **30 days** of the date of this Memorandum Order, Plaintiffs shall file a supplemental submission consistent with this Memorandum Order, including: (1) a certification from a person with personal knowledge identifying the source and present economic bearer of each of the $300,000 and $500,000 transfers; (2) supporting bank, general-

ledger, intercompany, or other accounting records sufficient to establish any reimbursement, credit, capital contribution, receivable, or other allocation among Plaintiffs; (3) a short legal memorandum identifying which Plaintiff or Plaintiffs are entitled to recover each proven loss; and (4) a proposed form of monetary judgment; and it is further

**ORDERED** that Plaintiffs shall serve the supplemental submission on Chandler at the addresses and email addresses previously used for service, and Chandler may file a response within **14 days** after service; and it is finally

**ORDERED** that this Memorandum Order resolves only Plaintiffs' Renewed Motion for Default Judgment against Chandler and does not adjudicate Plaintiffs' claims against any remaining Defendant.

Evelyn Padin, U.S.D.J.